UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PAMELA JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:12-CV-412 |
| ) | (PHILLIPS/GUYTON) |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Judge of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13, 13-1] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14, 15]. The Court has considered the parties' dispositive motions and briefs along with their supplemental briefs in support of their respective positions. [Docs. 16, 18, 19, 21].

Plaintiff Pamela Jordan seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On February 18, 2009, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income. [Tr. 49]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a

hearing. On November 24, 2010, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 31-46]. On January 27, 2011, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: seizure disorder, obstructive sleep apnea, diabetes, obesity, headaches, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant can perform no more than occasional climbing stairs, ramps, stooping, and bending from the waist to the floor; that the claimant is precluded from any climbing of ladders, ropes, or scaffolds; that the claimant is precluded from any work around hazards such as dangerous or moving machinery, unprotected heights, or sharp instruments; that the claimant is unable to operate a motor vehicle; and that the claimant requires changes in the workplace to be infrequent and gradually introduced.

6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 18-24].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.

Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. BACKGROUND

Plaintiff was thirty-four years old on her alleged onset date and on the date she filed her disability application. She has an eight-grade education and previous work experience as a housekeeper. She suffers from numerous severe impairments, including a seizure disorder, obstructive sleep apnea, diabetes, obesity, headaches, depression, and anxiety. She alleges additional psychological impairments.

## V. POSITIONS OF THE PARTIES

Plaintiff alleges that the ALJ erred in numerous respects. Plaintiff maintains that the ALJ committed reversible error by failing to give appropriate weight to a consultative examiner's report and failing to afford appropriate weight to Sam Kabbani, M.D., whom Plaintiff alleges is a treating physician. Additionally, Plaintiff argues that the ALJ's credibility finding is flawed and the ALJ's residual functional capacity determination ("RFC") is not consistent with the medical

6

evidence in the record. Finally, the Plaintiff contends that the ALJ erred by failing to include DOT numbers and exertional levels in his findings and that the ALJ erred by failing to consider the impact of the Plaintiff's obesity.

The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence. The Commissioner maintains that the Plaintiff did not prove that her subjective complaints of pain and other symptoms are fully credible. Finally, the Commissioner argues that substantial evidence supports the ALJ's decision that the Plaintiff can perform other work available in the national economy and local economy.

VI.     ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

A.     **Consultative Examination by Patricia A. Maffeo, Ph.D.**

On July 29, 2009, Plaintiff presented for a psychological evaluation with Patricia A. Maffeo, Ph.D. Dr. Maffeo found that the Plaintiff was moderately to severely limited in her ability to sustain concentration or persistence. [Tr. 407]. In support of this finding, Dr. Maffeo noted that the Plaintiff could not do serial sevens or serial threes, but she could spell the word "world" backwards. [Tr. 407].

Plaintiff argues that the ALJ erred by not giving this finding full weight. Plaintiff notes that she complained of difficulty concentrating during an office visit with James E. Deweese, PA-C. [Tr. 503]. Plaintiff maintains that this complaint supports Dr. Maffeo's finding. Plaintiff argues that the ALJ should have given "the claimant the benefit of the doubt," and afforded more weight to the concentration restriction found by Dr. Maffeo. [Doc. 13-1 at 7]. Plaintiff does not cite the Court to case law or statute in support of this analysis.

7

The ALJ thoroughly reviewed Dr. Maffeo's opinion in his decision. He gave the findings little weight, however, because Dr. Maffeo had only examined the Plaintiff on one occasion and did not have the benefit of the full evidence of record at the time of the examination. [Tr. 22].

Medical opinions of non-treating sources do not enjoy the same deferential status as is afforded to treating physicians. See 20 C.F.R. §§ 404.1527(c), 416.927(c). The weight to be afforded to medical opinions should be determined based upon: the nature and extent of the source's treating relationship with the claimant; the extent to which the source presents relevant evidence to support his or her opinion; the opinion's consistency with the record as a whole; and any factors that "tend to support or contradict the opinion." See 20 C.F.R. §§ 404.1527(c), 416.927(c).

In this case, Dr. Maffeo stated that she "reviewed no medical records" in making her assessment, [Tr. 405], which as the ALJ noted undercuts the reliability of her opinion. Dr. Maffeo based her finding regarding the Plaintiff's ability to concentrate on Plaintiff's performance during her examination. She noted Plaintiff could spell "world" backwards, but could not perform serial sevens or threes. [Tr. 407]. Those results, however, conflict with other evidence in the record.

For example, in a visit that took place almost a year after Dr. Maffeo's examination, Jack Scariano Jr., M.D., a physician who treated the Plaintiff on more than one occasion, found Plaintiff able to perform serial threes and simple calculations. [Tr. 586]. Dr. Scariano assessed that her attention span and concentration were "good." [Tr. 587]. In addition, Plaintiff admitted she is able to follow written instructions very well as long as she does not have a seizure or headache. [Tr. 153].

8

Based upon the foregoing, the Court finds that the ALJ did not err in affording little weight to Dr. Maffeo's finding regarding the Plaintiff's ability to concentrate.

### B. Opinion of Treating Physician Sam Kabbani, M.D.

Plaintiff argues that the ALJ erred by not affording appropriate weight to a statement by Sam Kabbani, M.D., advising that the Plaintiff should avoid stress. Plaintiff argues Dr. Kabbani is her treating physician, and she maintains that the ALJ erred by not stating why he did not give great weight to this portion of Dr. Kabbani's opinion. [Doc. 13-1 at 8]. Plaintiff alleges that the "ALJ gave great weight to other parts of Dr. Kabbani's opinion." [Id. at 8-9]. Again, Plaintiff does not cite the Court to any statute, case law, or legal authority in her analysis of this issue.

The Plaintiff cites the Court to Plaintiff's visit with Dr. Kabbani generally. It appears that she alleges that the ALJ erred by not affording additional weight to a "To Whom It May Concern" letter signed by Dr. Kabbani on February 17, 2009. [Tr. 345]. In the letter, Dr. Kabbani states that the patient has been diagnosed with a seizure disorder and lists situations that should be avoided, including: "no climbing/heights, no sharp objects, no working around flames/fire, no increased stressors (when possible) and NO DRIVING (unless seizure-free > 6 months per Tennessee state law.)" [Tr. 345]. In treatment notes from the same date, Dr. Kabbani did not mention avoiding stress in his "plan." Instead, he advised that the Plaintiff should have a sleep study, get an EEG, lose weight, not drive, and continue her medication. [Tr. 347].

The ALJ described the weight afforded to Dr. Kabbani's opinion, stating:

> The claimant's treating physician, Dr. Kabbani, stated in February of 2009 that the claimant should avoid working around hazards such as grills, torches, sharp objects, and heights. He further

9

>     opined that the claimant should avoid stressful situations and that
>     she should not operate a motor vehicle. The undersigned gives this
>     opinion some weight with regard to the claimant's residual
>     functional capacity.

[Tr. 22 (internal citations removed)].

Initially, the Court finds that Dr. Kabbani's status as a "treating source" is questionable. A treating physician is given special deference based upon his or her longitudinal knowledge of the claimant's condition, and thus, to qualify as a treating physician, a physician is expected to have "an ongoing treatment relationship" with the claimant. See 20 C.F.R. §§ 404.1502, 416.902 ("We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)."). The records in this case indicate that, at the time Dr. Kabbani made the statement regarding avoiding stress, he had treated the Plaintiff only once, on February 17, 2009. [Tr. 345-48]. Only the broadest interpretation of the definition of a "treating source," would include Dr. Kabbani as a treating physician at the time he made the statement regarding avoiding stress.

In addition, the Court would note that the letter – in which Dr. Kabbani indicated that the Plaintiff should avoid stress – appears on its face to be a form letter given to all seizure patients. The language of the letter – including its use of the term "patient" rather than the Plaintiff's name – indicates that the letter does not supply findings related to the Plaintiff's particular treatment or condition. For example, the letter states, "There are certain precautions which must be noted for seizure patients." [Tr. 345]. It continues, "We do not recommend patients work around fires (i.e. grills, torches), sharp objects (i.e. knives, meat-slicers), heights (i.e. climbing ladders, roofing) or stressful situations (when possible.)" [Tr. 345].

10

Notwithstanding, the ALJ treated Dr. Kabbani as a treating physician and considered the findings regarding sharp objects, hazards, and stress to be entitled to some weight. Given the underdeveloped treatment relationship, the generic nature of the recommendation about stress, and the merely advisory tone of the recommendation about stress, the Court finds that the ALJ's decision not to afford full weight to this finding is supported by substantial evidence.

The Plaintiff did not initially argue that the ALJ failed to give "good reasons" for discounting Dr. Kabbani's opinion. In supplemental briefing, the Plalintiff argued that the Commissioner failed to give "good reasons," but the argument is not developed by citation or explanation. The Court finds that the ALJ did not err in this regard, because he considered: the Plaintiff's self-reports that she was getting better around the same period and the Plaintiff's normal MRI. [Tr. 21]. Under the circumstances of this case, the undersigned finds that the ALJ's consideration fulfills the "good reasons" requirement.

Alternatively, to the extent the ALJ may have erred by not discussing the weight afforded to Dr. Kabbani's opinion, the Court finds any error was harmless. The Court of Appeals for the Sixth Circuit has recognized that where the goal of 20 C.F.R. § 404.1527(c)(2) is met, a failure to provide "good reasons" may be harmless. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 380 (6th Cir. 2013) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004)). Given the weaknesses of Dr. Kabbani's recommendation regarding stress, the Court finds that the ALJ otherwise met the regulation's goal by finding that the Plaintiff's residual functional capacity required that she only work under conditions that did not expose her to hazards and where "changes in the workplace to be infrequent and gradually introduced." [Tr. 20].

Based upon the foregoing, the Court finds that the ALJ did not err in affording only some weight to the findings of Dr. Kabbani.

11

## C. The ALJ's Credibility Finding

Plaintiff also asserts that the ALJ did not properly evaluate or assess her credibility under Social Security Ruling 96-7p. Plaintiff asserts that the ALJ made a generic credibility finding that did not comply with the requirements of SSR 96-7p.

The ALJ discussed the Plaintiff's subjective complaints at length. [Tr. 20-21]. In part, the ALJ explained:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically, determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. For instance, in a neurological exam in April of 2010, the claimant was oriented and her thought process was normal. In addition, the claimant was able to perform serial threes and simple calculations during this exam. The claimant was also able to recall 3 out of 3 items after a 5-minute and 10-minute delay. Moreover, during follow up exams in March and April of 2010, the claimant's doctor noted that she was stable on her current medication regime. In addition, in February of 2009, the claimant reported that her headaches and seizures were better. The claimant also had a normal MRI of her brain. In December of 2009, the claimant reported walking 4 times per day for a quarter mile each walk. Based on the foregoing, the undersigned finds that the claimant's impairments are not as severe as she has alleged.

[Tr. 21].

Social Security Ruling 96-7 is lengthy and addresses a number of topics, but generally, it instructs:

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be

12

> grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."

SSR 96-7p, 1996 WL 374186, *4.

"The ALJ's credibility findings are subject to substantial deference on review. . . ." White v. Comm'r of Soc. Sec., 572 F.3d 272, 288 (6th Cir. 2009) (quoting Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994)). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility," Walters, 127 F.3d at 531.

The Court finds that the ALJ complied with his duty to give specific reasons for the weight given to the Plaintiff's statements. In making his credibility determination, he considered numerous examinations, the Plaintiff's own reports regarding her symptoms, and objective medical tests in the form of the MRI. The ALJ explained how these portions of the record weighed against the Plaintiff's credibility, and he did not base his credibility determination on "an intangible or intuitive notion about an individual's credibility." SSR 96-7p.

The Court finds that the ALJ complied with SSR 96-7p in evaluating the Plaintiff's credibility, and the Court finds that it is not appropriate to disturb the ALJ's credibility determination. Thus, based upon the foregoing, the Court finds that the ALJ did not err in finding that the Plaintiff's subjective complaints were not fully credible.

**D.     The Residual Functional Capacity Determination**

The Plaintiff next argues that the ALJ erred by finding that the Plaintiff could perform her relevant past work as a housekeeper, which is classified as light unskilled work. The Plaintiff asserts that her "past work as a housekeeper would certainly require more than

13

occasional stooping or bending," [Doc. 13-1 at 12], and as a result, she argues the RFC determination is flawed.

The Commissioner acknowledges that the ALJ mistakenly found that the Plaintiff could perform her past relevant work as a housekeeper, despite the vocational expert testifying that she could not perform such work with her limited RFC. However, the Commissioner argues that the ALJ accurately conveyed the ultimate RFC to the vocational expert, and the vocational expert testified that there were jobs available in the local and national economies that the Plaintiff could perform with the RFC.

The Court finds that when asked whether a person with the RFC assigned to the Plaintiff could perform Plaintiff's past relevant work, the vocational expert testified that a person with such a RFC could not perform Plaintiff's past relevant work as a housekeeper. [Tr. 42-43]. Despite this testimony, the ALJ found that the Plaintiff could perform her past relevant work. [Tr. 22]. Accordingly, the Court finds that the ALJ erred at Step 4 of the disability evaluation process.

The Court, however, finds that the error at Step 4 was harmless because the ALJ continued on to Step 5 and did not err in his analysis at Step 5. See 20 C.F.R. §§ 404.1520, 416.920; see also Stull v. Astrue, 2011 WL 830633, at *6 (N.D. Ohio 2011). Moreover, the ALJ accurately conveyed the ultimate RFC to the vocational expert, and the vocational expert testified that there were jobs available in the local and national economies that the Plaintiff could perform with the RFC.

Based upon the foregoing, the Court finds that the ALJ did not commit reversible error at Step 4 by finding that the Plaintiff could perform her past relevant work.

14

Case 3:12-cv-00412-TAV-HBG Document 22 Filed 07/23/13 Page 14 of 17 PageID #: 97

### E. DOT Numbers and Exertional Levels

Next, the Plaintiff argues that the ALJ erred at Step 5 by failing to state any Dictionary of Occupation Titles (DOT) numbers or Specific Vocational Preparation Ratings (SVP) exertional levels for the jobs he recognized as being jobs the Plaintiff could perform given her RFC.

The Plaintiff does not cite any statute, case law, or other legal authority for this argument and she fails to develop this argument in any meaningful way. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." El-Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) (internal quotation marks omitted). Thus, as an initial matter, the Court finds that the Plaintiff waived this argument by failing to develop the argument.

Alternatively, the Court finds that the case law in this Circuit indicates that neither the vocational expert nor the ALJ have an affirmative duty to state DOT numbers or SVP exertional levels. See Sawdy v. Comm'r of Soc. Sec., 436 F. App'x 551, 554 (6th Cir. 2011); Monateri v. Comm'r of Soc. Sec., 436 F. App'x 434, 446 (6th Cir. 2011).

Based upon the foregoing, the Court finds that the ALJ did not err by failing to to state any DOT numbers or SVP exertional levels for the jobs he recognized as being jobs the Plaintiff could perform given her RFC.

### F. Plaintiff's Obesity

Finally, Plaintiff argues that the ALJ erred by only generally discussing Plaintiff's obesity. The Plaintiff's argument consists of three sentences, stating:

> The ALJ stated that he considered the impact of obesity on the claimant's abilities[,] however, this boiler plate language was insufficient. On December 4, 2009, she was 310 pounds. (R. 485)[.] The ALJ failed to properly consider her obesity and how it would affect her ability to work as required by SSR 02-1p.

15

[Doc. 13-1 at 13].

Again, the Court finds that the Plaintiff has likely waived this argument through her failure to develop this position in any meaningful way.

Notwithstanding, the Court finds that the ALJ did not err in addressing Plaintiff's obesity. Plaintiff's obesity is relevant only to the extent she can prove it affects her ability to work. See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition."). Social Security Ruling 02-1p states that levels of obesity do not correlate to any specific degree of functional loss. Thus, obesity or the Plaintiff's weight of 310 pounds does not, without more, establish an entitlement to disability.

In this case, the ALJ found that the Plaintiff's obesity was a severe impairment at Step 2. The ALJ cited SSR 02-1p and stated he had considered the impact obesity has on Plaintiff's work-related functioning, including her ability to perform routine movement and necessary physical activity. [Tr. 21]. The medical evidence in the record indicating any restrictions due to obesity were incorporated into the ALJ's RFC determination. Nathaniel D. Robinson, M.D., a state agency consultant, assessed that she was limited to occasional postural movements due to her weight. [Tr. 351]. The ALJ afforded great weight to Dr. Robinson's expert opinion, and the RFC finding incorporates such limitations. [Tr. 20].

In addition, the Court would note that Plaintiff did not attribute work-related limitations to her obesity. [Tr. 39].

Based upon the foregoing, the Court finds that the ALJ did not err in addressing the Plaintiff's obesity.

## VII. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing medium work, with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 14]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).